PIERRE BOURGET *vs.* CITY OF CAMBRIDGE.

Middlesex.　　March 11, 14, 1892. — May 10, 1892.

Present: FIELD, C. J., HOLMES, KNOWLTON, LATHROP, & BARKER, JJ.

*Personal Injuries — Traveller.*

One who was travelling in the highway of a city saw a loose telephone wire hanging so as to endanger travellers, and, stooping to pick it up and throw it out of the way, received injuries from an electric current passing into his body. The question was whether he lost by the act the protection given to travellers by the statute, so that he could not recover for a defect in the highway under the Pub. Sts. c. 52, § 18. *Held*, in an action against the city for the injuries, that the plaintiff ought to have been allowed to go to the jury; that it was immaterial that the wire belonged to the plaintiff's master, and that the mere fact that the plaintiff stopped momentarily, if he did, would not deprive him of his rights as a traveller.

TORT, to recover for injuries occasioned to the plaintiff by an alleged defect in a public street in Cambridge, called Crescent Avenue. The injury was alleged to have been caused by a dead telephone wire hanging down into and upon the sidewalk of the street, and upon and across an electric light wire fastened to the

street side of the factory of A. H. Hews and Company, by whom the plaintiff was employed.

At the trial in the Superior Court, before *Bond*, J., there was evidence tending to show that a short time before the accident, which occurred in the afternoon of January 23, 1891, and while the plaintiff was engaged in unloading clay in an enclosed place in the factory on a level with the street, which load of clay he had driven through an archway in the street side of the factory, a school-girl named Collins came along on the sidewalk in an easterly direction, with a paper of beans in her hand, and stepped on the telephone wire, and fell down and spilt her beans; that she got up and went to the plaintiff, and told him she had tripped over a wire, and asked him for some paper in which to gather up her beans; that he directed her to go to the office for it, and that she then went away; that Collins did not know at the time what caused her to fall, or think that an electric current had anything to do with it; that some time before the plaintiff had gone through the archway with the load of clay, the engineer of the factory had spoken to him about bringing some coal for his engine; that after tipping out of the cart the load of clay, and a few minutes after Collins had left him, he went out of the archway, which was not far from the corner of the factory, in a hurry to go and see the engineer about the coal, and left his cart tipped up, his horse unattended, and got out to the sidewalk in time to see the girl picking up her beans where they had fallen; that he walked along on the sidewalk towards the corner of the factory, to go around the corner into the yard space, and thence on his way to the room of the engineer; that when he came to the place where the telephone wire lay in front of him on the sidewalk, he saw the girl picking up her beans; that she was on the outer side of the sidewalk from the building, leaving a space of about three and a half feet for him to pass between her and the building; that the wire hung down nearly perpendicularly, with a slant to the sidewalk, where it bent and lay on the sidewalk; that he stooped down to pick it up with both hands, to throw it around the corner of the factory into the yard, — to use his language, "I was going to put it on Hews's land, outside the sidewalk, so it would not be in way of anybody"; that he was left-handed; that he

missed catching the wire with his left hand, and caught it with his right hand about three feet from the end of the wire; that he had no idea or thought that there could be any electrical current in the wire; that he instantly received the electrical current in his hand and body, became senseless, and lay on his back on the sidewalk, with his feet towards the yard space covered with asphalt, with the wire burning into his right hand for some three or four minutes; and that in this way he received severe bodily injuries. The plaintiff, on cross-examination, admitted that there was plenty of room to pass around or step over the wire. It also appeared in evidence, that the employment of the plaintiff took him several times a day to the several buildings of Hews and Company, his employers, and over this sidewalk between the archway and the yard and office, passing the corner of the building where he was injured.

The court ruled that the plaintiff was injured by attempting to remove an obstruction from a highway, and directed a verdict for the defendant; and the plaintiff alleged exceptions.

*D. E. Ware*, for the plaintiff.

*C. J. McIntire*, for the defendant.

HOLMES, J. The question, as presented by the plaintiff's evidence and the ruling of the court, is whether, if one who is travelling in the highway sees a loose telephone wire hanging so as to endanger travellers, and stoops to pick it up and throw it out of the way, he does by that act lose the protection given to travellers by the statute, so that he cannot recover for a defect in the highway under the Pub. Sts. c. 52, § 18. It must be assumed that the jury might have found that the plaintiff was using due care, unless the contrary appears as matter of law, and that the wire charged with electricity was a defect. The fact that the wire belonged to the plaintiff's master is immaterial. *Burt* v. *Boston*, 122 Mass. 223, 227. *Hill* v. *Winsor*, 118 Mass. 251, 255.

Our decisions have drawn the line of liability rather favorably for towns, and the case at bar comes pretty near the line; but we are of opinion that the plaintiff ought to have been allowed to go to the jury. It is plain that the mere fact that he stopped momentarily — if he did, which is not clear — would not deprive him of his rights as a traveller. *Bliss* v. *South*

*Hadley,* 145 Mass. 91, 94. *Varney* v. *Manchester,* 58 N. H. 430. *Duffy* v. *Dubuque,* 63 Iowa, 171. If he was a traveller, the mode of his coming into contact with the defect is not material, if it was not negligent. The fact that he voluntarily took hold of the wire no more prevents his recovery than his voluntarily brushing against it, or voluntarily walking over a pitfall. It may be said, no doubt, that such voluntary handling of the wire, even if not negligent, is not incident to the use of the highway for purposes of travel; and that therefore, if harm comes of it, it should not be imputed to the travel, nor give rise to liability, although the cause of the harm was a defect for which the city would have been liable if it had interfered with travel, and had done the damage in that way. We agree that cases of benevolent intermeddling by a volunteer can be put, in which he would take the risk of any harm that might befall him. For instance, if a man should come with carts and bricks and mortar to make serious changes and repairs. But it seems to us that to throw on one side, out of the way of travel, either with one's stick or one's hands, a light movable object, which is an annoyance or a nuisance where it is, is one of those every-day acts of kindly feeling which fairly may be said to be an incident of travel, as it commonly goes on, and to be within the protection of the law. *Babson* v. *Rockport,* 101 Mass. 93, 94. *Britton* v. *Cummington,* 107 Mass. 347. *Gulline* v. *Lowell,* 144 Mass. 491. *Graham* v. *Boston, ante,* 75.

*Exceptions sustained.*